UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-CV-07474-RGK-AFM | Date | March 16, 2020 |
|---|---|---|---|
| Title | ***STEVE LANDY V. PETTIGREW CREWING, INC. ET AL*** | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams (Not Present) | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| Not Present | | Not Present |

**Proceedings:** **(IN CHAMBERS) Order Re: Plaintiff's Motion for Settlement Approval of Class Action Settlement [DE 27]**

## I.   INTRODUCTION

On July 15, 2019, Steve Landy ("Plaintiff") filed a putative class action Complaint against Pettigrew Crewing, Inc. ("Defendant") in Los Angeles County Superior Court, alleging failure to timely pay wages under California Labor Code § 204 and provide adequate wage statements under California Labor Code § 226. For both claims, Plaintiff sought damages under the California Private Attorneys General Act ("PAGA"), as well as penalties under § 226 specifically. *See* Cal. Lab. Code § 2698, *et seq*; Cal. Lab. Code § 226(e).

On August 28, 2019, Defendant answered the Complaint and removed the action to federal court on the basis of federal question jurisdiction. Plaintiff later filed a motion to remand challenging Defendant's § 204 preemption assertions made in the Notice of Removal, which this Court denied. (ECF No. 21.)

On January 9, 2020, the parties filed a Joint Notice of Settlement after a full day of private mediation and an extensive negotiation process. Presently before the Court is Plaintiff's unopposed Motion for Preliminary Approval of Class Action Settlement.

For the following reasons, the Court **GRANTS** Plaintiff's motion for class certification for purposes of this settlement, and **CONDITIONALLY GRANTS** Plaintiff's Motion for Preliminary Approval of Class Action Settlement.

## II.   FACTUAL BACKGROUND

Plaintiff's Complaint alleges the following:

From 2009 to March 22, 2019, Defendant employed Plaintiff as a cameraman. During Plaintiff's employment for Defendant, Defendant did not provide wage statements that accurately displayed the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-CV-07474-RGK-AFM | Date | March 16, 2020 |
|---|---|---|---|
| Title | *STEVE LANDY V. PETTIGREW CREWING, INC. ET AL* | | |

applicable hourly rates during the pay period and the corresponding number of hours worked at each hourly rate, in violation of California Labor Code § 226's requirements.

Defendant also failed to pay wages to employees within the periods required by § 204. For work performed between the 1st and 15th of the month, § 204(a) requires an employer to pay its employees between the 16th and 26th days of that month. For work performed between the 16th and the last day of the month, § 204(a) requires an employer to pay its employees between the 1st and 10th day of the following month. Alternatively, employers can pay their employees on a "weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven calendar days following the close of the payroll period." § 204(d). Defendant routinely paid employees more than three weeks after the end of the last pay period for which the employee worked.

On July 8, 2019, Plaintiff notified the California Labor & Workforce Development Agency ("LWDA") of Defendant's Labor Code violations. Because the LWDA had not responded to Plaintiff's notice, Plaintiff and the aggrieved employees sought recovery on behalf of the State of California for these violations pursuant to the PAGA.

On January 9, 2020, Plaintiff and Defendant reached a settlement after a full-day private mediation. The basic terms of the proposed Settlement are as follows: Defendant denies any liability to Plaintiff or the Class associated with the claims alleged in this lawsuit. Defendant has agreed to pay a non-revisionary Gross Settlement Amount ("GSA") of $150,000. Due to Defendant's financial hardship, confirmed by Plaintiff's counsel through confidential documents, Defendant will fund the Settlement through a payment plan. The payment plan demands an initial $10,000 deposit within 30 days of the Court's grant of preliminary approval, followed by subsequent $10,000 payments on the 15th of each month, for a total of fifteen payments ($150,000).

The GSA will fund: (1) settlement administration costs estimated to not exceed $6,995, (2) LWDA for settlement of the PAGA claims brought in this suit in the amount of $7,500, (3) a class representative service award for $10,000, (4) attorney's fees up to $50,000 (one-third of the GSA), and (5) an award of costs up to $10,000 for fees and costs. The remaining funds ("Net Settlement Amount" or "NSA"), estimated at $65,505, will be distributed to approximately 446 Class Members, based on the number of wage statements each member received during the class period. Thus, the average recovery is $146.87 per Class Member.

### III. JUDICIAL STANDARD

Federal Rule of Civil Procedure ("Rule") 23 requires that class action settlements satisfy two primary prerequisites before the court may grant certification for purposes of preliminary approval: (1) that the settlement class meets the requirements for class certification if it has not yet been certified; and (2) that the proposed settlement is "fair, adequate, and reasonable." Fed. R. Civ. P. 23(a), (e)(2); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020, 1026 (9th Cir. 1988).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:19-CV-07474-RGK-AFM | Date | March 16, 2020 |
|---|---|---|---|
| Title | *STEVE LANDY V. PETTIGREW CREWING, INC. ET AL* | | |

A. **Rule 23(a) and Rule 23(b)**

As a threshold to class certification, the proposed class must satisfy four prerequisites under Rule 23(a). First, the class must be so numerous that joinder of all members individually is impracticable. Fed. R. Civ. P. 23(a)(1). Second, there must be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Third, the claims or defenses of the class representative must be typical of the claims or defenses of the class as a whole. Fed. R. Civ. P. 23(a)(3). Finally, the proposed class representatives and proposed class counsel must be able to fairly and adequately protect the interests of all members of the class. Fed. R. Civ. P. 23(a)(4).

If all four prerequisites of Rule 23(a) are satisfied, a court must then determine whether to certify the class under one of the three subsections of Rule 23(b). Under Rule 23(b), the proposed class must establish that: (1) there is a risk of substantial prejudice from separate actions; (2) declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) common questions of law or fact predominate such that a class action is superior to other methods available for adjudicating the controversy at issue. Fed. R. Civ. P. 23(b).

In analyzing whether the proposed class meets the requirements for certification, a court must take the substantive allegations of the complaint as true and may consider extrinsic evidence submitted by the parties. *See Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).

B. **Rule 23(e)**

Before approving a class settlement, the Court must first determine whether a proposed settlement that would bind class members is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Hanlon,* 150 F.3d at 1026. To determine whether a settlement agreement meets the above standards, a district court may consider some, or all, of the following factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* at 1026; *See Officers for Justice v. Civil Serv. Comm'n of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list of relevant considerations"). Courts evaluate the settlement as a whole, rather than its individual parts, to determine its overall fairness. *Hanlon,* 150 F.3d at 1026. Second, the court must consider the adequacy of the proposed settlement notice. *Id.* at 1025; Fed. R. Civ. P. 23(e). Further, when the settlement agreement comes "[p]rior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class," and thus a court must scrutinize the settlement for evidence of collusion or other

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-CV-07474-RGK-AFM | Date | March 16, 2020 |
|---|---|---|---|
| Title | *STEVE LANDY V. PETTIGREW CREWING, INC. ET AL* | | |

conflicts of interest. *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Products Liability Litig.)*, 654 F.3d 935, 946-47 (9th Cir. 2011).

### IV.   DISCUSSION

Plaintiff first asks the Court to conditionally certify the proposed settlement class for purposes of settlement only, then seeks preliminary approval of the Settlement. The Court addresses each point in turn.

####   A.   Class Certification for Settlement Purposes Only

Plaintiff seeks to certify a class for settlement purposes only defined in the Settlement as:

"all non-exempt current and former employees who were paid wages at any time and worked for Pettigrew in California at any time from July 8, 2018 to November 5, 2019. Defendant represents that it issued 4,601 wage statements to 446 unique Class Members between July 8, 2018, and November 5, 2019. Defendant also represents that it issued 103 wage statements between July 8, 2018, and August 5, 2019, to 20 non-unionized employees."

Settlement Agreement § 1.2.

#####   1.   *Rule 23(a) Requirements*

As set forth above, a party seeking class certification must establish that the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) have been met. The Court addresses each requirement in turn.

######   a.   *Numerosity*

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). The plaintiff need not state the exact number of potential class members, and there is no threshold number of class members required to satisfy numerosity. *Bates v. United Parcel Serv.*, 204 F.R.D. 440, 444 (N.D. Cal. 2001). However, it is "generally accepted that when a proposed class has at least forty members, joinder is presumptively impracticable based on numbers alone." *In re Banc of California Sec. Litig.*, 326 F.R.D. 640, 646 (C.D. Cal. 2018). Here, Defendant's payroll records identify approximately 446 potential Class Members. (Gavron Decl. ¶ 8, ECF No. 27.)

Accordingly, the Court finds that numerosity is satisfied.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-CV-07474-RGK-AFM | Date | March 16, 2020 |
|---|---|---|---|
| Title | *STEVE LANDY V. PETTIGREW CREWING, INC. ET AL* | | |

      b.     *Commonality*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In the Ninth Circuit, the commonality requirement is "construed permissively." *Hanlon*, 150 F.3d at 1019. Not *all* questions of fact or law need be common to the class; the existence of shared legal issues with divergent factual predicates or a common core of salient facts coupled with disparate legal remedies is sufficient to satisfy commonality. *Id.* In short, the requirements for finding commonality are minimal. *Id.* at 1020. Plaintiff avers that one of the questions of law and fact common to the Class is whether Defendant failed to provide accurate itemized wage statements. (Gavron Decl. ¶¶ 6-7.) This determination is a common question of fact that would be answered on a class-wide basis. Further, Defendant's potential liability arises from a common alleged error made in its wage statements for the anticipated 446 Class Members. (Mot. at 15:1-3; Landy Decl. ¶ 2, ECF No. 27.)

The Court finds that Plaintiff has satisfied the commonality requirement.

      c.     *Typicality*

Rule 23(a)(3) requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class they seek to represent. Fed. R. Civ. P. 23(a)(3). This does not require that the claims of the representative parties be identical to the claims of the proposed class members. *Hanlon*, 150 F.3d at 1020. Rather, typicality focuses on whether the unnamed class members have injuries similar to those of the named plaintiffs, and whether those injuries result from the same injurious course of conduct. *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001). In practice, the commonality and typicality requirements of Rule 23 "tend to merge." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982).

Plaintiff claims that typicality is satisfied because Plaintiff and Class Members' injuries resulted from the same purportedly injurious course of conduct by Defendant—non-compliant wage statements that lacked the applicable rates of pay for all wages paid. Plaintiff further asserts that all putative Class Members' claims are rooted in the same set of operative facts and are based on the same legal theory. (Landy Decl. ¶ 2; Gavron Decl. ¶¶ 2, 6–7.) Here, Plaintiff, like every other Class Member, was employed by Defendant, received itemized wage statements from the same payroll system Defendant used to process wage statements, and suffered similar injuries from the alleged violations.

The Court finds this is more than sufficient to satisfy the typicality requirement.

      d.     *Adequacy*

Rule 23(a)(4) requires the Court to determine if the proposed class representatives and proposed class counsel will fairly and adequately protect the interests of the entire class. Fed. R. Civ. P. 23(a)(4). The adequacy requirement is satisfied if the named plaintiffs and their counsel will prosecute the action

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:19-CV-07474-RGK-AFM | Date | March 16, 2020 |
| Title | *STEVE LANDY V. PETTIGREW CREWING, INC. ET AL* | | |

vigorously on behalf of the class, and do not have interests adverse to unnamed class members. *Hanlon*, 150 F.3d at 1020.

          i.      Adequacy of the Proposed Class Representative

Plaintiff asserts that with indistinguishable injuries from the whole Class, Plaintiff has the incentive to fairly represent all Class Members to achieve maximum recovery. Furthermore, Plaintiff remains willing to prosecute this action despite the Settlement. Accordingly, the Court finds that there is no apparent conflict of interest between Plaintiff and the putative Class Members, thus the proposed class representative will fairly and adequately protect the interests of the Class.

          ii.      Adequacy of Class Counsel

To be adequate, "[t]he named representative's attorney [must] be qualified, experienced, and generally capable to conduct the litigation." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018) (alteration in original) (quoting *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1323 (9th Cir. 1982)). Plaintiff claims his attorneys are experienced complex wage and hour litigators who have been class counsel to a number of other wage and hour class actions. (Gavron Decl. ¶¶ 3–7, 10–15; Lee Decl. ¶¶ 2–8; Marder Decl. ¶¶ 2–12.) Without any challenge to the adequacy of Class counsel, who possess significant employment law experience, the Court finds that the proposed Class counsel will fairly and adequately protect the interests of the Class.

    2.    <u>Rule 23(b) Requirements</u>

The Court must now determine whether Plaintiff meets his burden of showing that the proposed Class satisfies the requirements of Rule 23(b)(3).

A class action may be maintained under Rule 23(b)(3) if the court finds that (1) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

          a.      *Predominance*

When evaluating whether common issues predominate, the operative question is whether a putative class is "sufficiently cohesive" to merit representative adjudication. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Though common issues need not be "dispositive of the litigation," *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 29 (D.D.C. 2001), they must "present a significant aspect of the case [that] can be resolved for all members of the class in a single adjudication"

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-CV-07474-RGK-AFM | Date | March 16, 2020 |
|---|---|---|---|
| Title | *STEVE LANDY V. PETTIGREW CREWING, INC. ET AL* | | |

so as to justify "handling the dispute on a representative rather than an individual basis." *Hanlon*, 150 F.3d at 1022.

Plaintiff contends that the issue of whether Defendant's failure to provide accurate wage statements with the correct rate of pay to its employees is common to the whole Class and predominates over individual issues that may exist. Here, how each Class Member was injured does not require an individualized inquiry. Rather, the unlawful wage statements were subject to a class-wide proof given Defendant's uniform distribution process of wage statements. *See Perez v. Safety-Kleen Sys., Inc.*, 253 F.R.D. 508, 520-21 (N.D. Cal. 2008) (holding that the plaintiffs established that common issues predominate over individual issues in the class action when the defendant employer failed to, among other things, provide accurate itemized wage statements, and noting that litigation of the wage statement violation will require "class-wide proof rather than individual inquiries.").

The Court finds that predominance has been satisfied.

      **b.**    *Superiority*

Rule 23(b)(3) requires the Court to assess whether a class action is superior to other methods of adjudication. In making this assessment, the Court considers: (1) the interest of each member in "individually controlling the prosecution or defense of separate actions"; (2) the "extent and nature of any litigation already begun"; (3) the "desirability or undesirability of concentrating the litigation of the claims"; and (4) the "likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

Plaintiff contends that, in the absence of a class action, the Class Members would have to litigate numerous cases on a piecemeal basis for low potential damages. In light of this concession, and upon consideration of the factors set forth in Rule 23(b)(3), the Court finds that a class action is superior to individualized litigation. Requiring hundreds of class members to litigate their labor claims separately would be inefficient and costly, resulting in duplicative and potentially conflicting proceedings. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978) ("Numerous individual actions would be expensive and time-consuming and would create the danger of conflicting decisions as to persons similarly situated.")

The Court finds that the class action is the superior method for adjudicating the controversy. Thus, Rule 23(b)(3) has been satisfied.

    **B.**    **Preliminary Approval**

Having found that Plaintiff has met the requirements for class certification for purposes of settlement only under Rule 23(a) and Rule 23(b), the Court must now determine whether the Settlement reached is "fair, adequate, and reasonable" pursuant to Rule 23(e).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-CV-07474-RGK-AFM | Date | March 16, 2020 |
|---|---|---|---|
| Title | *STEVE LANDY V. PETTIGREW CREWING, INC. ET AL* | | |

1. *The Settlement Agreement*

In determining whether a settlement is "fair, reasonable, and adequate," the Ninth Circuit has provided a non-exhaustive list of fairness factors for district courts to analyze, but the weight given to each factor varies based on the unique circumstances in each case. *Officers for Justice*, 688 F.2d at 625. Furthermore, "district courts have wide discretion in assessing the weight and applicability of each factor." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 5 *Moore's Federal Practice*, § 23.85[2][a] (Matthew Bender 3d ed.). "Ultimately, the district court's determination is nothing more than an 'amalgam of delicate balancing, gross approximations, and rough justice'" *Officers for Justice*, 688 F.2d at 625 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 468 (2d Cir. 1974)). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Id*. Having reviewed the parties' submitted materials, the Court turns to the relevant factors.

   a. *Effects of Continuing Litigation*

First, the Court analyzes the potential risk to Plaintiff if the litigation were to continue. Plaintiff's attorneys contend that continuing litigation creates uncertainty as to the trial outcome such that the Court could decline to find Defendant liable. Plaintiff further asserts that continuing litigation would generate appeals, as Defendant claimed it would have filed a motion for summary judgement. Additionally, Plaintiff anticipates this suit would be a prolonged litigation due to Defendant's denial of any liability to Plaintiff or the Class. Finally, Defendant has claimed financial hardship and provided Plaintiff's counsel confidential financial documents to support its contention. Plaintiff's counsel, after reviewing and evaluating the documents, opined that, even if Plaintiff were to proceed to judgment, Defendant would not be able to pay larger class-wide damages. (Gavron Decl. ¶ 6; Lee Decl. ¶ 2). In reaching a settlement, the parties avoid cost, delay, uncertainty of further litigation, trial and appellate review. (Settlement Agreement § 2.5, EFC No. 27.)

Therefore, given the risks of continuing litigation, this factor favors a finding that the settlement agreement is fair, adequate, and reasonable.

   b. *Amount Offered and Allocation of Class Member Settlement Shares*

      i. Settlement Amount

The Ninth Circuit has observed that 'the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (citation omitted). Thus, when analyzing the amount offered in a settlement, the Court should examine "the complete package taken as a whole," and the amount is "not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 628. Furthermore, a

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-CV-07474-RGK-AFM | Date | March 16, 2020 |
|---|---|---|---|
| Title | *STEVE LANDY V. PETTIGREW CREWING, INC. ET AL* | | |

"[c]ash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Id.*

Here, the proposed GSA totals $150,000. Plaintiff's counsel estimates a possible recovery of $426,100 in statutory Labor Code § 226(e) penalties were the case to proceed to trial (Gavron Decl. ¶ 3). The settlement amount thus represents 35% of the possible recovery. The Ninth Circuit has approved of settlements well within that range. *See Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 459 (9th Cir. 2000) (affirming approval of class settlement which represented roughly one-sixth of the potential recovery); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476, at *4 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 F. App'x 452 (9th Cir. 2009) (finding settlement of a wage and hour class action that constituted 25% to 35% of the claimed damages to be reasonable).

The parties agree that the GSA reflects a fair compromise as to Plaintiff's allegations given the time expended by the parties in mediation with experienced wage and hour class action mediator Joel Grossman, as well as substantial investigation and discovery prior to reaching the settlement. Further, Plaintiff contends that prior approved settlements, including *McKenzie v. Federal Express Corp.*, No. 2:10-CV-02420-GAF (PLA), 2012 U.S. Dist. LEXIS 103666 (C.D. Cal. July 2, 2012) and *Brown v. CVS Caremark, et al.*, No. 2:15-CV-07631 JFW (PJW), Dkt. No. 41 (C.D. Cal 2017) support this preliminary approval, as the settlements in those cases yielded a lower payout per wage statement than the case herein. (Mot. 18:1-14.)

Although the settlement terms appear to be the product of informed, arms-length negotiations and based on Defendant's ability to pay, the Court has concerns as to the average recovery per class member. Because a settlement agreement negotiated prior to formal class certification creates a greater potential for a breach of the fiduciary duty owed to the class, "such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015).

To evaluate whether a settlement falls within the range of possible approval, "courts consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). Here, the NSA is approximately $65,505, and the Class includes roughly 446 members. Therefore, the average net recovery per Class Member will be approximately $146.87. Plaintiff contends that the current settlement is fair, reasonable, and adequate because, compared to the analogous *McKenzie* case that yielded a payout of $17 per wage statement,[1] and the *Brown* case that yielded a payout $18.42[2] per wage statement, here the settlement provides for a higher payout of $32.60[3] per wage statement. (Mot. 18:1-14.) However, Plaintiff fails to

---

[1] GSA of $8,250,000 for 484,928 wage statements (Mot. 18:7.)
[2] GSA of $3,000,000 for 162,858 wage statements (Mot. 18:13.)
[3] GSA of $150,000 for approximately 4,601 wage statements (Mot. 18:1-3.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-CV-07474-RGK-AFM | Date | March 16, 2020 |
|---|---|---|---|
| Title | *STEVE LANDY V. PETTIGREW CREWING, INC. ET AL* | | |

mention that these two analogous cases yielded a much higher net recovery per class member than the recovery in this one.

In *McKenzie*, the court stated that "[b]ased on an NSA figure of more than $5.3 million and a total of 14,344 participating Class Members, the highest settlement share to be paid is $585.00, and the average settlement share to be paid is $372.00." *McKenzie*, 2012 U.S. Dist. Lexis 103666, at *12-13. The court in *McKenzie* makes no mention about the recovery per wage statement based on the GSA. Rather, the court notes the average net recovery per class member. *Id.* Additionally, in *Brown*, the court also identified that the average recovery per class member amounted to $257.90. *See Brown*, No. 2:15-CV-07631 JFW (PJW), Dkt. No. 41. Thus, comparing the $146.87 average net recovery per Class Member in this case to *McKenzie* at $372 and *Brown* at $257.90, the Court notes that the average payout per Class Member here yields lower results than in either. Additionally, in *McKenzie* 64%[4] of the GSA was distributed among the class. *See McKenzie*, 2012 US Dist Lexis 103666 at *3-4. Similarly in *Brown*, 70%[5] of the GSA was distributed to the class. *See Brown*, No. 2:15-CV-07631 JFW (PJW), Dkt. No. 41. Here, about 44%[6] of the GSA is expected to be distributed to the Class. Without justification for the lower settlement shares per class member or other approved settlements in this district that favors Plaintiff's preliminary approval, this outcome concerns the Court. Thus, the Court is unlikely to approve of a settlement amount to the Class that is less than 50% of the GSA.

    ii.  Allocation Method

The parties estimate that, after deduction for claims of administration costs, attorney's fees, costs, PAGA penalties and Plaintiff's representative capacity award, the NSA of about $65,505 will be distributed among approximately 446 members based upon the number of pay periods each Class Member worked for Defendant. (Settlement Agreement § 5.1). The allocation method is as follows:

> The Settlement Administrator will calculate individual Class Members' pro-rata share of the NSA for their individual settlement payment. Each Class Member's proportional share will be determined by applying the following formula:
>
> Each pay period in which a Settlement Class Member received a wage statement the Class Period based on Defendant's available records shall be given one credit, with the exception of any pay period in which a Settlement Class Member worked as a non-unionized employee between July 8, 2018 and August 5, 2019, which shall be given two credits. The total credits shall then be totaled (the "Total Class Credits").

---

[4] NSA of $5,300,000/GSA of $8,250,000 = 64% (*See McKenzie*, 2012 U.S. Dist. Lexis 103666, at *3-4)
[5] NSA of $2,007,500/GSA of $3,000,000 = 70% (*See Brown*, No. 2:15-CV-07631 JFW (PJW), Dkt. No. 41)
[6] NSA of $65,505/GSA of $150,000 = 44% (Mot. at 8:13-20)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-CV-07474-RGK-AFM | Date | March 16, 2020 |
|---|---|---|---|
| Title | *STEVE LANDY V. PETTIGREW CREWING, INC. ET AL* | | |

Each Settlement Class Member's potential share of the NSA will be calculated by dividing his/her respective number of credits by the Total Class Credits, multiplied by the NSA.

(Ex. A § IV, ECF No. 27).

Thus, the Court finds the allocation method is fair, reasonable, and adequate.

   *c.*  *Attorneys' Fees*

The parties have agreed to Class counsel fees of up to $50,000 (one-third of the GSA) plus an award of costs up to $10,000. Even where parties have agreed to an amount for attorneys' fees, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable." *In re Bluetooth*, 654 F.3d at 941. Although there are two methods to determine attorneys' fees in common fund cases—namely, the lodestar approach and the percentage approach—"the main inquiry is whether the end result is reasonable." *Cox v. Clarus Mktg. Grp.*, 291 F.R.D. 473, 482 (S.D. Cal. 2013) (citing *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000)). Under the lodestar approach, attorneys are awarded an amount calculated by multiplying the hours reasonably expended on litigation by a reasonable hourly rate. *In re Bluetooth*, 654 F.3d at 941. "This Circuit has established 25% of the common fund as a benchmark award for attorney fees." *Hanlon*, 150 F.3d at 1029. On the other hand, the percentage method awards the prevailing attorneys a percentage of the common fund recovered for the class.

Here, Class counsel has requested up to 33 1/3% of the GSA, or $50,000, plus a cost award of up to $10,000. *See id.* Although ultimate approval of a fee award is reserved for a later stage in the proceedings, the Court notes that Counsel has not made any justification for its upward deviation. "Courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth*, 654 F.3d at 942. Before final approval, the court will "scrutinize closely the relationship between attorneys' fees and benefit to the class" and will not "award[] unreasonably high fees simply because they are uncontested." *Id.* at 948 (internal quotation marks and citation omitted). Class counsel must therefore make a sufficient showing justifying any upward departure from the Ninth Circuit's benchmark to be awarded the level of fees requested. Here, Class counsel does not describe any such special circumstance, nor does it cite to any authority to support its contention that courts routinely make awards in the one-third range for similar labor class action cases. Moreover, the Court is concerned by the prospect of fees amounting to 33 1/3% of the GSA while the Class itself takes only about 44%.

For the reasons described above, the Court believes that where the class is taking less than 50% of the GSA, a fee award of over 33% is too great without some special justification. The Court therefore finds that the Class counsel's request of fees is not reasonable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-CV-07474-RGK-AFM | Date | March 16, 2020 |
|---|---|---|---|
| Title | ***STEVE LANDY V. PETTIGREW CREWING, INC. ET AL*** | | |

        d.      *Class Representative Enhancement Payments*

     The named Plaintiff requests an enhancement payment of $10,000. In some cases, named plaintiffs "are eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2013). The district court must individually consider each enhancement payment using relevant factors, such as:

> the actions the plaintiff has taken to protect the interest of the class; the degree to which the class has benefited from those actions; the amount of time and effort the plaintiff expended in pursuing the litigation; and reasonable fears of workplace retaliation.

*Id.* (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

     Nevertheless, when individuals "joined in bringing this action as a class action…[they] disclaimed any right to a preferred position in the settlement." *Officers for Justice*, 688 F.2d at 632. Therefore, courts must carefully consider the disparity between damages provided to named plaintiffs and other class members to ensure fairness, adequacy, and reasonableness. *Staton*, 327 F.3d at 975. For example, the *Staton* court reversed the district court's ruling and concluded that a settlement where named plaintiffs received sixteen times greater damages than individual class members was unreasonable because the large disparity was unjustified. *Id.* at 978. By contrast, where the incentive awards bear a reasonable relationship to the average awards received by class members, a court is more likely to approve. *See Morales v. Stevco, Inc.*, No. 1:09-CV-00704 AWI, 2012 WL 1790371, at *19 (E.D. Cal. May 16, 2012) (approving incentive awards of $7,500 where the average recovery per class member was approximately $4,300); *Feao v. UFP Riverside, LLC*, No. 17-CV-3080-PSG (JPRX), 2019 WL 4137417, at *8 (C.D. Cal. Jan. 8, 2019) (approving incentive award of $7,500 where the average recovery per class member was $1,865.90.)

     Here, the Settlement awards a $10,000 enhancement payment for the named Plaintiff, which is *sixty-eight times greater* than the average recovery per Class Member and nearly 7% of the GSA. In the Motion, Class counsel summarily provides what actions the named Plaintiff had undertaken to help Class counsel litigate the suit. These include meeting and conferring with Class counsel on a number of occasions and making himself available to review and sign the PAGA letter, his Declaration, and the Settlement. (Landy Decl. ¶ 10). The Motion further mentions Plaintiff's financial risk in pursuing the suit if Defendant was to prevail, as well as Plaintiff's official resignation as a condition of the settlement. (Landy Decl. ¶¶ 8, 11).

     In light of the extreme disparity between what the named Plaintiff stands to receive from the Settlement ($10,000), compared with other Class Members ($146.87), the Court is unable to approve Plaintiff's proposed enhancement award without some further justification. Any award greater than twenty-five times that of the average recovery per class member will be regarded with skepticism, and must be supported by a detailed declaration explaining why that upward departure is warranted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-CV-07474-RGK-AFM | Date | March 16, 2020 |
|---|---|---|---|
| Title | *STEVE LANDY V. PETTIGREW CREWING, INC. ET AL* | | |

e. *Scope of Release*

As part of the Settlement, Class Members will release claims alleged in the operative Complaint against Defendant. For Class Members this includes claims for violation of Labor Code § 226 and PAGA claims pursuant to California Labor Code § 2698, and for non-unionized Class Members it includes PAGA claims based on Labor Code § 204. Unlike the Class Members, who will not be providing a general release or waiver pursuant to California Civil Code § 1542[7], the named Plaintiff will be doing so per the settlement agreement.

"A settlement agreement may preclude a party from bringing a related claim in the future 'even though the claim was not presented and might not have been presentable in the action,' but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action." *Hesse v. Spring Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (citations omitted). A proposed settlement agreement is overly broad when it fails to limit the claims released to those based on the facts alleged in the complaint. *See id.* Here, the released claims per the Settlement are solely limited to the facts alleged in the Complaint. The Class Members are releasing claims based on Labor Code § 226, while the non-unionized Class Members are releasing claims based on Labor Code § 204. Thus, the Court finds the scope of the release provided fits squarely within the Ninth Circuit parameters.

After reviewing the parties' submitted materials, and acknowledging that, to date, Plaintiff did not know of any objections to the Settlement, the Court conditionally approves the proposed Settlement. The conditional grant is grounded upon the Court's concerns regarding (1) attorneys' fees exceeding the Ninth Circuit 25% benchmark without justification, (2) an incentive payment to class representative exceeding *fifteen to twenty-five times* what the average Class Member is estimated to receive without justification, and (3) distribution of less than 50% of the settlement to the Class.

f. *The Proposed Notice*

Having found the proposed Settlement is conditionally fair, reasonable, and adequate pursuant to Rule 23(e), "[t]he court must direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed R. Civ. P. 23(e)(1). Further, for a Rule 23(b)(3) class, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be reasonably identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be

---

[7] Under California Civil Code §1542, "[a] general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-CV-07474-RGK-AFM | Date | March 16, 2020 |
|---|---|---|---|
| Title | *STEVE LANDY V. PETTIGREW CREWING, INC. ET AL* | | |

heard.'" *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1138, 1352 (9th Cir. 1980)).

The Court finds the proposed notice sufficiently informs the Class Members of (1) the nature of the litigation and the Settlement Class; (2) the terms of the Settlement Agreement; (3) the monetary amounts that the Settlement will provide Class Members; (4) the deadlines for requesting exclusion of the Settlement; (5) objecting to the Settlement; (6) the consequences of taking or foregoing the various options available to Class Members; and (7) the date, time, and place of the Final Approval Hearing. Moreover, because the class consists of non-exempt employees who were paid wages by the Defendant, identifying the Class Members from the Defendant's payroll records and notifying the Class should prove easily achievable.

Thus, the Court finds that the proposed notice and method of delivery is sufficient, and thus, approves the notice.

**V.     CONCLUSION**

Accordingly, the Court **GRANTS** Plaintiff's motion for class certification for purposes of settlement. In addition, the Court **CONDITIONALLY GRANTS** Plaintiff's Motion for Preliminary Approval of Class Action Settlement. Specifically, preliminary approval is conditioned on the parties amending the issues discussed above. These include (1) a proposed attorney's fees award in accordance with the Ninth Circuit's 25% benchmark, and (2) a named plaintiff enhancement of no greater than 25 times the average individual settlement award.

The Parties shall submit a revised Notice of Settlement and Proposed Order Approving the Revised Notice of Settlement no later than **7 days** from the date this Order is issued. Alternatively, the parties may submit any joint objections to this Order and supporting documentation by the same.

**IT IS SO ORDERED.**

                                                                                      :
                                          Initials of Preparer        _____