Larry W. Lee (State Bar No. 228175)
lwlee@diversitylaw.com
Max W. Gavron (State Bar No. 291697)
mgavron@diversitylaw.com
**DIVERSITY LAW GROUP, P.C.**
515 S. Figueroa Street, Suite 1250
Los Angeles, CA 90071
(213) 488-6555
(213) 488-6554 facsimile

WILLIAM L. MARDER, ESQ. (CBN 170131)
bill@polarislawgroup.com
**Polaris Law Group LLP**
501 San Benito Street, Suite 200
Hollister, CA 95023
Tel: (831) 531-4214
Fax: (831) 634-0333

Attorneys for Plaintiff and the Class

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| STEVE LANDY, as an individual and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>PETTIGREW CREWING, INC., a California corporation; and DOES 1 through 50, inclusive,<br><br>        Defendants. | Case No.:  2:19-cv-07474 RGK (AFMx)<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:       August 24, 2020<br>Time:      9:00 a.m.<br>Courtroom: 850<br>Judge:    Hon. R. Gary Klausner |

1

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 24, 2020, at 9:00 a.m., or as soon thereafter as the matter can be heard in Courtroom 850 of the United States District Court, Central District of California, located at 255 E. Temple Street, 8th Floor, Los Angeles, CA 90012, before the Honorable R. Gary Klausner, Plaintiff Steve Landy ("Plaintiff") will and hereby does move this Court for an Order: (1) granting final approval of the proposed class action settlement; (2) approving Class Counsel's application for attorneys' fees in the amount of $37,500.00 (approximately 25% of the Gross Settlement Amount) and reimbursement of costs in the amount of $7,485.99; and (3) approving Plaintiff's request for a service award of $4,650.00.

Given that this is a Motion for Final Approval of a settlement reached with Defendant Pettigrew Crewing, Inc. ("Defendant"), Plaintiff does not anticipate that Defendant will oppose this Motion.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the accompanying Declarations of Larry W. Lee, Max W. Gavron, William L. Marder, Steve Landy, and Elizabeth Kruckenberg, any oral argument of counsel, the complete files and records in the above-captioned matter, and such additional matters as the Court may consider.


DATED:  July 27, 2020                     DIVERSITY LAW GROUP, P.C.


                                          By: _____
                                              Larry W. Lee
                                              Max W. Gavron
                                          Attorneys for Plaintiff and the Class

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ............................................................................7

II.  LITIGATION HISTORY AND SUMMARY OF ARGUMENT ............8

III. THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO AND SUCCESSFULLY CARRIED OUT...........................................9

    A.   Dissemination of Notice ...............................................................9

    B.   CAFA Notice .................................................................................9

IV.  OVERVIEW OF PLAINTIFF'S CLAIMS..........................................10

V.   THE SETTLEMENT .........................................................................10

VI.  THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL APPROVAL .....................................................................................11

    A.   The Strength of Plaintiff's Case Supports Settlement...................12

    B.   Risks, Expense, and Duration of Continued Litigation Supports Settlement ....................................................................................13

    C.   The Settlement Amount Favors Settlement...................................13

    D.   The Parties' Exchange of Information Favors Settlement.............14

    E.   The Recommendations of Counsel Favor Approval of the Settlement ....................................................................................15

    F.   The Class Has Responded Favorably to the Proposed Settlement ....................................................................................15

    G.   The Procedure Through Which the Settlement Was Achieved Supports Final Approval ..............................................................16

VII. THE COURT SHOULD APPROVE THE ATTORNEYS' FEES AND COSTS .............................................................................................17

    A.   The Percentage of the Fund Method Supports Class Counsel's Award ............................................................................................18

    B.   The Lodestar Method Also Supports Class Counsel's Request....19

    C.   The Court Should Approve the Request for Reimbursement of Costs .............................................................................................20

VIII. THE COURT SHOULD AWARD PLAINTIFF'S REQUESTED ENHANCEMENT ............................................................................21

IX.  CONCLUSION ................................................................................22

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**State Cases**

*Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles*, 186 Cal. App. 4th 399, 412 (2010).................................................................................................................21

**Federal Cases**

*Armstrong v. Board of Sch. Dirs.*, 616 F.2d 305, 325 (7th Cir. 1980) ....................15

*Bellinghausen v. Tractor Supply Co.*, 2015 WL 1289342, at *6 (N.D. Cal. Mar. 20, 2015) ....................................................................................................................14

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)............................15

*Bravo v. Gale Triangle, Inc.*, No. CV 16–03347 BRO (GJXx), 2017 WL 708766, at *18 (C.D. Cal. Feb. 16, 2017) ........................................................................22

*Brown v. CVS Caremark*, United States District Court, Central District, Case No.: 2:15-cv-07631-JFW-PJW..................................................................................14

*Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010)... ........................................................................................................... 12, 15, 16

*Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir .2004) ....................16

*Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)............................12

*Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008).....19

*Di Giacomo v. Plains All Am. Pipeline*, 2001 WL 34633373, at *10–11 (S.D. Fla. Dec. 19, 2001) ...................................................................................................19

*Dyer v. Wells Fargo Bank, N.A.*, 2014 WL 5369395, at *3 (N.D. Cal. Oct. 22, 2014).................................................................................... 12, 13, 15, 16

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).................15

*Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000) .............................19

*Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990).............................................17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) .............. 11, 12, 16

*Harris v. Vector Mktg. Corp.*, No. C–08–5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ...................................................................................22

*In re Bluetooth Headset Prods. Liab. Litig. (In re Bluetooth)*, 654 F.3d 935, 942 (9th Cir. 2011) ............................................................................................ 18, 19

*In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990)..........................................................................................................22

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

*In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir.2000) ............. 13, 14

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ........15

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) ........................18

*Joel A. v. Giuliani*, 218 F.3d 132, 138 (2nd Cir. 2000) ............................................11

*Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) ................................15

*Lao v. H&M Hennes & Mauritz*, N.D. Cal. Case No. 5:16-cv-333 EJD.................20

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).................17

*Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058 (N.D. Cal. 2019)........20

*McKenzie v. Federal Express Corp.*, 2012 US Dist Lexis 103666 (C.D. Cal. July 2, 2012) ...................................................................................................................14

*Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013) ...................................................................................................................12

*Officers for Justice v. Civil Service Comm'n of City and. County of San Francisco*, 688 F.2d 615, 625 (9th. Cir. 1982) ............................................................. 16, 17

*Pallas v. Pacific Bell*, 1999 WL 1209495, at *6 (N.D. Cal. July 13, 1999)...........15

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) ...................................18

*Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) .......................15

*Roberts v. Texaco*, 979 F. Supp. 185, 198 (S.D.N.Y. 1997)...................................20

*Rodriguez v. Nike Retail Servs., Inc.*, 928 F.3d 810, 818 (9th Cir. 2019) ..............20

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009)......................16

*Stanton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003) .....................................21

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) .............................................................................................................................22

*Weiss v. Mercedes–Benz*, 899 F. Supp. 1297 (D.N.J. 1995) ..................................20

*Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983)......................... 15, 17

## Statutes

Labor Code § 226.................................................................................... 12, 14

Labor Code § 226(e) .....................................................................................7, 20

Labor Code § 2699(g)(1) ..................................................................................20

## Other Authorities

4 *Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002) ................................17

4 *Newberg On Class Actions*, at §11.45 ................................................................13

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

*Manual For Complex Litigation* (Fourth) § 30.42) ................................................17

**Rules**

Federal Rule of Civil Procedure 23(e) ....................................................................11

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

By this motion, Plaintiff Steve Landy ("Plaintiff" or "Named Plaintiff") seeks final approval of a substantial class-wide settlement reached between Plaintiff and Defendant Pettigrew Crewing, Inc. ("Defendant") (Plaintiff and Defendant collectively, the "Parties"). Plaintiff also seeks an order approving Class Counsel's application for attorneys' fees in the amount of $37,500.00 (25% of the Gross Settlement Amount of $150,000.00), reimbursement of litigation costs in the amount of $7,485.99, and Plaintiff's application for an enhancement award of $4,650.00. This request was set forth in the Notice of Settlement of Class Action and Settlement Hearing ("Notice Packet") mailed to all Class Members. As set forth in the Joint Stipulation and Class Action Settlement and Release and Revised Notice of Settlement (together, "Settlement Agreement") between the Parties, Defendant has agreed to not object to the requests sought herein.

Defendant provided to Plaintiff detailed pay and time data for the entire Class, which included the number of wage statements issued during the class period. From this data, Plaintiff's counsel was able to calculate the maximum potential amount of class-wide damages if Plaintiff were to prevail on his claims, which is approximately $426,100 in statutory Labor Code section 226(e) penalties. (Declaration of Max W. Gavron ("Gavron Decl.") ¶ 6.)  This potential exposure does not take into account any of the risks inherent to uncertainty of class certification, trial, appeal, and Defendant's ability to pay any judgment.

The Class Settlement results in an average payment of approximately $195.60 per person, with the highest payment to be approximately $631.12. (Declaration of Elizabeth Kruckenberg ("Kruckenberg Decl.") ¶ 11.)

On April 20, 2020, the Court entered an Order Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 35; *see also* Dkt. No. 30 (Order Conditionally Granting Preliminary Approval) (together,

7

"Preliminary Approval Order"). As the notice process has been completed, the Parties now seek this Court's final approval of the settlement.

The settlement requires Defendant to pay a total of $150,000.00, a sum which represents a substantial recovery for the members of the Class. **Again, this settlement is non-reversionary, such that no monies will revert to Defendant.** As such, there was no claims process involved. Class Members were given an opportunity to object or opt-out of the settlement. To date, there have been seven (7) opt outs and zero (0) objections to the settlement. (Kruckenberg Decl. ¶¶ 8–9.) Accordingly, this shows that the overwhelming majority of Class Members have reacted favorably to the settlement. Moreover, all of this Court's orders concerning dissemination of the Notice Packet have been followed.

Based thereon, Plaintiff respectfully requests that final approval be granted in its entirety.

## II.    LITIGATION HISTORY AND SUMMARY OF ARGUMENT

Defendant removed this action, and Plaintiff moved to remand. (Dkt. Nos. 1, 14, 21.) After the Court denied Plaintiff's motion for remand, Plaintiff propounded interrogatories, requests for production, requests for admission, and noticed the deposition of Defendant's FRCP 30(b)(6) witness. (Gavron Decl. ¶ 4–5.) Shortly thereafter, the Parties agreed to exchange information informally in advance of a private mediation. In connection with the mediation, Defendant provided Plaintiff with data for the entire class, which permitted Plaintiff's counsel to conduct a damage analysis. (*Id*.)

On January 7, 2020, the Parties attended a full day of mediation with employment mediator, Joel Grossman, Esq., after which the Parties arrived at the current settlement. (Gavron Decl. ¶¶ 6–7.)

The detailed terms of the settlement are set forth in the Joint Stipulation and Class Action Settlement and Release (Dkt. No. 27-2) and the Revised Notice of Settlement (Dkt. No. 34) (together, "Settlement Agreement") entered by the Parties

8

and previously provided to this Court. Pursuant to the settlement terms, Defendant will pay the entirety (100%) of the settlement sum of $150,000.00 without any reversion to Defendant.

The proposed settlement meets the criteria for final approval which are set forth in the Manual for Complex Litigation, Fourth, is well within the range of what would be fair, reasonable, and adequate in this case, as evidenced by the lack of objections and minimal opt-outs. Thus, Plaintiff requests that the Court grant final approval.

## III.    THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO AND SUCCESSFULLY CARRIED OUT

### A.    Dissemination of Notice

As noted above, preliminary approval was granted on April 20, 2020.  (Dkt. No. 35, *see also* Dkt. No. 30.)  At that time, Phoenix Settlement Administrators (the "Settlement Administrator") was appointed by the Court as the Settlement Administrator. The Parties, through the work of the Settlement Administrator, have complied with this Court's orders concerning dissemination of the class notices. (Kruckenberg Decl. ¶¶ 2–7.)

The notices were mailed to the class of 446 individuals utilizing the data provided by Defendant. (Kruckenberg Decl. ¶ 5.) Of those, 8 notices were returned with an invalid address. (Kruckenberg Decl. ¶ 6.) Out of these, 1 was mailed to a forwarding address and 7 were mailed to updated addresses after using skip trace to find new addresses. (*Id.*) As of the date of the filing of this Motion, one (1) Notice Packet is considered undeliverable because it was returned a second time. (*Id.* ¶ 7.)

### B.    CAFA Notice

Defendant will provide notice of the proposed settlement to the required federal and state agencies.

//

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## IV.   OVERVIEW OF PLAINTIFF'S CLAIMS

As discussed in detail in the previously filed Motion for Preliminary Approval (Dkt. No. 27), the class claim at issue in this lawsuit arises from Plaintiff's allegation that Defendant issued defective wage statements and failed to timely pay wages to employees. Defendant, however, strongly disagrees with Plaintiff's contentions and believes that Plaintiff's claims are without merit. Defendant contends that it has complied with all applicable laws.

## V.   THE SETTLEMENT

The Settlement terms were summarized in detail in the Motion for Preliminary Approval, and Plaintiff respectfully incorporates those arguments herein so as to avoid unnecessary duplication. The specific terms of the settlement are set forth in the Settlement Agreement (Dkt. Nos. 27-2 and 34) and the Order Granting Motion for Preliminary Approval of Class Settlement (Dkt. No. 35; *see also* Dkt. No. 30 (addressing scope of the release, adequacy of counsel, estimated enhancement and attorneys' fee requests, and allocation method)).  The most important terms of the Settlement Agreement, as preliminarily approved by the Court are:

| | | Estimated Class Distribution per Class Member (Assumes Even Work Weeks) | $195.60[1] |
|---|---|---|---|
| Gross Settlement Fund (non-reversionary) | $150,000.00 | | |
| Class Counsel Fees (25%) | $37,500.00 | Estimated Class Members | 446 |
| Class Rep Enhancement | $4,650.00[2] | | |

[1] Kruckenberg Decl. ¶ 11.

[2] At the time of preliminary approval, the estimated individual class member award was $186.89 ($83,355.00/446 class members).  Accordingly, the requested enhancement award for the named plaintiff was approximately 25 times the

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

| | | |
|---|---|---|
| **Settlement Administration Costs** | $6,995.00 | |
| **Class Counsel Costs (Originally Estimated to be ≤ $10,000)** | $7,485.99 | |
| **PAGA Allocation (75% to State)** | $7,500.00 | |
| **PAGA Allocation (25% to Employees)** | $2,500.00 | |
| **Net Settlement Fund** | $85,869.01 | |

The settlement represents a compromise between the positions and evaluations of the two sides to this controversy.  There were significant disagreements between the Parties as to the facts and the law.  Further informing the terms of the Settlement Agreement is Defendant's ability to pay a judgment given the nature of its business, especially now considering ongoing fallout related to the Corona Virus Pandemic.  (*See* Dkt. No. 31-1.)

## VI.    THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL APPROVAL

Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action must receive Court approval. The court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2nd Cir. 2000). In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d

average individual award ($4,650.00/$186.89=24.88).  Now, Plaintiff's requested enhancement is approximately 24 times the average individual award ($4,650/$195.60=23.77).  *See* Kruckenberg Decl. ¶ 11.

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1268, 1276 (9th Cir. 1992).

The fairness, reasonableness, and adequacy of any class action settlement depends on "the relative strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; ... and the reaction of class members to the proposed settlement." *Hanlon* 150 F.3d at 1026. Here, as set forth in the Motion for Preliminary Approval and discussed below, the factors for final approval of this settlement have been established. Most importantly, as noted by the Court at the preliminary approval stage, the net settlement fund is greater than 50% of the gross settlement fund, and the Plaintiff's enhancement is less than 25 times the average class member's recovery.

### A.    The Strength of Plaintiff's Case Supports Settlement

This factor is generally satisfied when plaintiffs must overcome barriers to make their case. *Chun–Hoon v. McKee Foods Corp*., 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). First, Plaintiff would have been required to prevail on a class certification motion, which is never guaranteed. Second, even assuming class certification could be achieved, Plaintiff would still have to prove his case. Defendant asserts that its wage statements complied with Labor Code § 226 and disputes that its wage payments to non-union class members were untimely.

Therefore, this factor favors settlement. *See Dyer v. Wells Fargo Bank, N.A*., 2014 WL 5369395, at *3 (N.D. Cal. Oct. 22, 2014) (factor favors final approval where "[p]laintiffs acknowledge that, if the settlement is not approved, they will encounter significant obstacles in establishing their claims"); see *also Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013) (finding that the relative strength of plaintiffs' case favored settlement because plaintiffs admitted they would face hurdles in proving liability and damages).

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**B.** **Risks, Expense, and Duration of Continued Litigation Supports Settlement**

"Difficulties and risks in litigating weigh in favor of approving a class settlement." *Dyer*, 2014 WL 5369395, at *3 (citation omitted). In addition to the obstacles set forth above, even if Plaintiff had prevailed at trial, there was a likelihood that Defendant would have appealed the verdict.  Most importantly, Defendant provided evidence supporting its claim that it would have difficulty paying a judgment if this action were taken through trial because of the nature of Defendant's business, and, now, the impact of the Corona Virus Pandemic.  (*See* Dkt. No. 31-1; Gavron Decl. ¶ 6.) Thus, the risks, expense, and duration of continued litigation favor final approval of the settlement. *See id.* at *3 ("This factor supports final approval of this settlement because, without a settlement, Plaintiffs would risk recovering nothing after a lengthy and costly litigation."). Again, Plaintiff faced significant risk in this case based on Defendant's contention that its wage statements complied with the law, and that it could not pay a judgment in the event the Court or jury found otherwise.

**C.** **The Settlement Amount Favors Settlement**

The standard of review for class settlements is whether the Settlement is within a range of reasonableness. As Professor Newberg comments:

> Recognizing that there may always be a difference of opinion as to the appropriate value of settlement, the courts have refused to substitute their judgment for that of the proponents. Instead the courts have reviewed settlements with the intent of determining whether they are within a range of reasonableness.…

4 *Newberg on Class Actions*, at §11.45.

Numerous courts have held that **gross** settlements approximating between only 8 and 25% of the defendant's potential exposure are fair and reasonable. *See, e.g.*, *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir.2000) (holding

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

that class action settlement recovering 16% of potential exposure was fair and reasonable; "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair. Rather, the fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment"; noting that whether the settlement is fair and adequate depends on the "the difficulties in proving the case"); *Bellinghausen v. Tractor Supply Co*., 2015 WL 1289342, at *6 (N.D. Cal. Mar. 20, 2015) (holding that class action settlement recovering between 8.5% and 25% of the defendant's potential exposure was fair).

Nevertheless, assuming 100% liability on Plaintiff's Labor Code Section 226 claim, the $150,000.00 settlement represents 35% of the maximum $426,100 exposure, which is reasonable and consistent with other class action settlement recoveries. As addressed in the Court's Preliminary Approval Order (Dkt. Nos. 35, 30), the settlement falls within the range of reasonableness. *See McKenzie v. Federal Express Corp*., 2012 US Dist Lexis 103666 (C.D. Cal. July 2, 2012); *Brown v. CVS Caremark*, United States District Court, Central District, Case No.: 2:15-cv-07631-JFW-PJW. Moreover, the net settlement sum comprises greater than 50% of the gross settlement fund, which further supports final approval.

## D. The Parties' Exchange of Information Favors Settlement

Here, settlement was reached following the exchange of significant data and documents. The negotiations at all times were adversarial and non-collusive, including a full day before a third-party mediator. Moreover, Plaintiff's counsel had the data necessary to ascertain the value of the class claims. Courts have held that such discovery is sufficient for parties to make an informed decision regarding the adequacy of the settlement. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 459 (9th Cir. 2000) (formal discovery not necessary where the parties have sufficient information to make an informed decision about settlement).

//

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**E.    The Recommendations of Counsel Favor Approval of the Settlement**

The recommendations of experienced counsel should be given considerable weight. *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."); *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983), *Armstrong v. Board of Sch. Dirs.*, 616 F.2d 305, 325 (7th Cir. 1980).

Lead counsel for Plaintiff has broad experience litigating employment class actions. (Declaration of Larry W. Lee ("Lee Decl.") ¶¶ 3–7; Gavron Decl. ¶¶ 10–16; Declaration of William L. Marder ("Marder Decl.") ¶¶ 3–10.) They support this settlement as a fair and reasonable settlement which is in the best interest of the settlement class. (Lee Decl. ¶ 9; Gavron Decl. ¶¶ 6–9; Marder Decl. ¶ 2.) Therefore, this factor favors approval of the settlement. *See Dyer*, 2014 WL 5369395, at *3 (recommendation of plaintiffs' counsel supports approval of settlement); *Chun-Hoon*, 716 F. Supp. 2d at 848 (same).

**F.    The Class Has Responded Favorably to the Proposed Settlement**

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that" the settlement is favorable to class members. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008), *see Pallas v. Pacific Bell*, 1999 WL 1209495, at *6 (N.D. Cal. July 13, 1999) ("The greater the number of objectors, the heavier the burden on the proponents of settlement to prove fairness.").

Here, zero individuals have objected, only seven individuals have opted out of this settlement, and there are no disputes. (Kruckenberg Decl. ¶¶ 8–10.) In other words, this settlement has a 0% objection and a 1.57% opt out rate. (*Id.*) Thus, the

15

low percentage of objections and opt-outs strongly support the fairness of the settlement. *See Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004); *Dyer*, 2014 WL 5369395, at *4; *Chun–Hoon*, 716 F. Supp. 2d at 852 (where 16 of 329 class members opted out, court found that positive class reaction "strongly supports settlement").

### G.    The Procedure Through Which the Settlement Was Achieved Supports Final Approval

The Ninth Circuit has recognized that the factors to be examined at final approval may differ depending on the circumstance of each case. *Officers for Justice*, 688 F.2d at 625. As noted above, the Parties participated in an arm's length negotiation, facilitated by a professional mediator with significant class action experience. This weighs in favor of approval of the settlement. *See Chun-Hoon*, 716 F. Supp. 2d at 851 (finding that use of formal arm's length mediation supported approval of settlement agreement).

Further, the Ninth Circuit has shown longstanding support of settlements reached through arm's length negotiation by capable opponents. In *Rodriguez v. West Publishing Corp*., 563 F.3d 948 (9th Cir. 2009), the Ninth circuit expressly opined that courts should defer to the "private consensual decision of the [settling] parties." *Id*. at 965, citing *Hanlon*, 150 F.3d at 1027. The primary reason for deferring to such settlements is the experience of counsel and the participation of a neutral, both of which factors are present here.

The Court in *Rodriguez* found that the settling parties "put a good deal of stock in the product of an arms' length, non-collusive, negotiated resolution, and have never prescribed a particular formula by which that outcome must be tested." *Rodriguez*, 563 F.3d at 965 (citations omitted). As the Court explained, "[i]n reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted

16

to present value." *Id*. at 965 (citations omitted). *See also Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir.1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); 4 *Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002); *Manual for Complex Litigation* (Fourth) § 30.42).

The proposed settlement has no deficiencies. There is no standard or benchmark for determining whether any given settlement is fair. "Ultimately the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice v. Civil Service Comm'n of City and. County of San Francisco*, 688 F.2d 615, 625 (9th. Cir. 1982) (citation omitted). In making its determination, the Court should weigh the benefits that the settlement will realize for the class against the uncertainty of litigation and the possibility that the class members would obtain no relief in the absence of a settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements").

The settlement has been reached after considerable investigation, litigation, negotiation, and involving the mediation efforts of a highly experienced mediator. Each side evaluated the strengths and weaknesses of their case and independently came to the conclusion that this settlement represents a responsible means of addressing the claims of Plaintiff and the Class, as well as Defendant's contention that it would prevail on the merits and may not be able to satisfy a judgment if the case were taken through trial.

## VII.    THE COURT SHOULD APPROVE THE ATTORNEYS' FEES AND COSTS

The Ninth Circuit has recognized a "ground swell of support for mandating a percentage-of-the-fund approach in common fund cases." *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373,

---

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

378-79 (9th Cir. 1995) (affirming attorney's fee of 33% of the recovery).

**A. The Percentage of the Fund Method Supports Class Counsel's Award**

The Ninth Circuit has typically found that 25% of the common fund is "benchmark." *In re Bluetooth Headset Prods. Liab. Litig. (In re Bluetooth)*, 654 F.3d 935, 942 (9th Cir. 2011). "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Id.* at 941. "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Id.* at 942. "[T]he lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010).

In the Ninth Circuit, contingency fee recovery is typically in the range of 20% to 33 1/3 % of the total settlement value, with 25% considered a benchmark. *See In re Bluetooth*, 654 F.3d at 941. "Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar. Applying this calculation method, courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *Id.* at 942. As set forth in the Parties Settlement Agreement and addressed by the Court in its Preliminary Approval Order, Plaintiff's counsel requests the Ninth Circuit benchmark of 25% of the common fund, or $37,500, in this case. (Dkt. Nos. 34, 35.) Thus, under the percentage method, Class Counsel's fee request meets the benchmark. (Dkt. Nos. 34, 35.) It is further justified by the discussion above regarding the strength of Plaintiffs' case, the challenges counsel

18

1   faced in negotiating this settlement, and the fact that there are no objectors.

2   **B. The Lodestar Method Also Supports Class Counsel's Request**

3   Courts may also "cross-check" the percentage-of-the-fund approach using

4   the lodestar method.  *See id.* at 944.  The lodestar method calculates a fee award

5   by multiplying hours worked, by hourly rate, and typically provides a multiplier

6   that takes into account risk endured by class counsel.  *Fischer v. SJB-P.D. Inc.*,

7   214 F.3d 1115, 1119 (9th Cir. 2000).

8   A significant amount of work on the part of Class Counsel went into

9   achieving this resolution. Based upon the factors relating to approval of percentage

10   of the fund fee awards, class counsel submit that the effort and result justify the

11   requested percentage fee requested. As a secondary "cross-check" to the

12   percentage of the common fund award, class counsel are also providing this Court

13   with a time and task chart, which breaks down the tasks and time spent by

14   Plaintiff's counsel, so that the Court can conduct a lodestar analysis.

15   Plaintiff's attorneys' time and task charts show in this case that Plaintiff's

16   counsel lodestar is approximately $44,300, which is **more** than the requested fee

17   amount and does not require any multiplier.  (Gavron Decl. ¶¶ 17–19, Ex. A.)

18   The hourly rate employed by Class Counsel, as declared in the attorney

19   declaration, is reasonable and has been approved by many other courts. (Gavron

20   Decl. ¶¶ 10–19.)

21   Plaintiff's attorneys are entitled to the hourly rates charged by attorneys of

22   comparable experience, reputation, and ability for similar litigation. The

23   background and experience of Plaintiff's counsel are fully set forth in the

24   declarations filed in support of this motion. Indeed, despite not needing one here,

25   many courts approve multipliers to the lodestar calculation. S*ee also Craft v. Cty.*

26   *of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving a

27   multiplier of 5.2 and collecting cases); *Di Giacomo v. Plains All Am. Pipeline*,

28   2001 WL 34633373, at *10–11 (S.D. Fla. Dec. 19, 2001) (approving 30% fee,

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

resulting in 5.3 multiplier); *Roberts v. Texaco*, 979 F. Supp. 185, 198 (S.D.N.Y. 1997) (approving multiplier of 5.5); *Weiss v. Mercedes–Benz*, 899 F. Supp. 1297 (D.N.J. 1995) (approving multiplier of 9.3), *aff'd*, 66 F.3d 314 (3d Cir.1995

Moreover, Plaintiff's attorneys are zealous advocates, having heavily and aggressively litigated numerous wage and hour class actions on behalf of workers throughout the State of California – all cases of which are on a contingency fee basis. *See*, *e.g.*, *Lao v. H&M Hennes & Mauritz*, N.D. Cal. Case No. 5:16-cv-333 EJD; *Rodriguez v. Nike Retail Servs., Inc*., 928 F.3d 810, 818 (9th Cir. 2019); *Magadia v. Wal-Mart Assocs., Inc*., 384 F. Supp. 3d 1058 (N.D. Cal. 2019).

For example, in *Magadia*, Plaintiff's counsel litigated that case for several years, including trying the case to a successful $102 million judgment on behalf of the class. Walmart appealed and Plaintiff's counsel have not been reimbursed for any attorneys' fees or costs. As such, employment class actions present significant risks. Nevertheless, Plaintiff's attorneys zealously represent workers notwithstanding the potential for losing cases, or not being reimbursed attorneys' fees and costs for years of tireless litigation.

The fee sought relates to all efforts expended by Class Counsel for the complete handling of this action.  For the reasons above, the Court should finally approve Class Counsel's requested fee.

## C. The Court Should Approve the Request for Reimbursement of Costs

The request for reimbursement of costs, in the amount of $7,485.99 is fair and reasonable. The costs are all litigation related costs, which have been detailed in the supporting declaration of Class Counsel. (Lee Decl. ¶ 8, Ex. B.) The authority for the Court to award costs is the Parties' Settlement Agreement and California Labor Code §§ 226(e), and 2699(g)(1).

Pursuant to the Settlement Agreement, Defendant has agreed not to oppose any request for reimbursement of costs up to $10,000.00, but the actual costs that are being sought are much less than the amount allotted in the Settlement

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Agreement. Thus, the unclaimed costs in the amount of $2,514.01 will be allocated to the Net Settlement Amount available for distribution to class members. Accordingly, the Court should award Class Counsel's requested costs.

## VIII.    THE COURT SHOULD AWARD PLAINTIFF'S REQUESTED ENHANCEMENT

Finally, Plaintiff's enhancement is also justified given the duration of the litigation and his availability throughout the litigation to cooperate in producing documents, reviewing documents, and being available both in person and phone call to offer crucial information regarding this lawsuit.

Plaintiff respectfully requests that the full amount of the service payment be awarded to Plaintiff for the efforts undertaken on behalf of the Class Members. When evaluating a requested enhancement, Courts typically consider: 1) the risk to the class representative in commencing the suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *See Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles*, 186 Cal. App. 4th 399, 412 (2010) (citing *Stanton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003)). Each of these factors favors the service awards requested in the present case.

Plaintiff is the only representative in this case. Plaintiff met with his attorneys to provide information regarding the facts involved. (Declaration of Steve Landy ("Landy Decl.") ¶¶ 3, 6.) Plaintiff has made himself available to answer questions, review the pleadings, including the settlement agreement, and sign declarations in support of the various motions that have been brought in this case.  (*Id*.)

Plaintiff took these risks upon himself from which the whole Class benefitted. Class members did not have to file individual lawsuits, nor did they

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

have to bear the risks of payment of fees and costs should they not prevail. Class members also do not have to face the risk of potential retaliation or risk of future employment, due to Plaintiff's efforts.

"Generally, in the Ninth Circuit, a $5,000 incentive award is presumed reasonable." *Bravo v. Gale Triangle, Inc.*, No. CV 16–03347 BRO (GJXx), 2017 WL 708766, at *18 (C.D. Cal. Feb. 16, 2017) (citing *Harris v. Vector Mktg. Corp.*, No. C–08–5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012)). As addressed by Plaintiff in the Revised Notice of Settlement (Dkt. No. 34), Plaintiff's requested enhancement is approximately 24 times that of the average class member ($4,650.00 / $195.60= 23.77). This requested enhancement is in line with the Court's order preliminarily approving the Settlement Agreement and comports with, or is less than, awards provided by many courts. *See e.g. Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 454–55 (E.D. Cal. 2013) (approving incentive award of $5,000); *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 477 (E.D. Cal. 2009) (same).

Moreover, a $4,650.00 service payment represents a mere **0.03%** of the gross settlement amount. For such reasons, Plaintiff respectfully requests that this Court find the enhancement payment amount of $4,650.00 to Plaintiff as fair, reasonable, and adequate and that the enhancement payment be awarded to Plaintiff.

## IX.    CONCLUSION

Based on the foregoing, Plaintiff and Class Counsel respectfully request that the Court grant final approval, and approve Plaintiff's counsel's fee request of $37,500.00, costs requested in the amount of $7,485.99, and class representative enhancement of $4,650.00. The Parties have reached this settlement following extensive litigation, ongoing case discussions and arm's length negotiations. Plaintiff respectfully requests that the Court:

1.    Grant final approval of the proposed settlement;

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

2.      Order payment from the settlement proceeds to the Settlement Administrator in compliance with the Settlement Agreement;

3.      Order payment from the settlement proceeds to Class Counsel and Plaintiff in compliance with the Settlement Agreement;

4.      Order payment from the settlement proceeds to the LWDA in compliance with the Settlement Agreement;

5.      Enter the proposed Final Approval Order and Judgment submitted herewith; and

6.      Retain continuing jurisdiction over the implementation, interpretation, and consummation of the settlement.


DATED:  July 27, 2020                    DIVERSITY LAW GROUP, P.C.


                                         By:_____
                                              Larry W. Lee
                                              Max W. Gavron
                                         Attorneys for Plaintiff and the Class

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**